## Rust v. City of Newport

Nov. 26, 1940.

A. M. Caldwell, Judge.

Thomas W. Hardesty for appellant.

Carl H. Ebert for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant, Ignatius Rust, is the owner of a five room frame house located on a lot fronting 50 feet on Monmouth Street in Newport. That street was formerly Alexander Pike before the territory through which it passes was annexed by Newport. Monmouth Street was widened and resurfaced in 1936. It was surfaced with concrete and a concrete curbing was placed in front of Rust's property. This construction work was done without cost to abutting property owners, and was an original construction, in so far as the City was concerned.

The City urgently insists that it was entitled to a peremptory instruction, since the building of Monmouth Street was an original construction. Several cases, including the cases of Lewis v. City of Whitesburg, 253 Ky. 480, 69 S. W. (2d) 989, and Town of Erlanger v. Cody, 158 Ky. 625, 166 S. W. 202, are cited in support of this contention. Having reached the conclusion that the judgment should be affirmed, it is unnecessary to consider this question.

Rust and his wife brought this action late in December, 1937, against the City of Newport and the Dixie Construction Company, the concern which built the street. Summons was served on the City, but the sheriff reported that the Construction Company was not found in the county. We are concerned, therefore, only with the aspects of the case which relate to the City.

Rust alleged that the grade of the street was changed and the defendants "did collect and divert great volumes of water thereby and cause the same to

flow into and upon the property of these plaintiffs and against the home of said plaintiffs that had theretofore been erected thereon." The petition further alleged:

"Plaintiff says further that the defendants were careless and negligent in the matter heretofore set out.

"Plaintiffs say further that on or about the 15 day of December 1936 the defendants diverted carelessly and negligently a great volume of water against the plaintiff's house on the aforesaid property thereby causing the said house to slide on the foundation thereof and said foundation to crack and bulge, and the walls of said house to crack, the floors thereof to sink and the boards thereof to separate, the joists thereof to slide off of the foundation."

The issues were joined, proof was heard and judgment was rendered in favor of the City upon the unanimous verdict of the jury. The jury visited the premises during the trial. Instructions offered by the plaintiff and given put squarely before the jury the question of whether the City on or about the 15th day of December, 1936, "carelessly or negligently diverted or caused to be diverted a great or any volume of water upon or against plaintiff's house," thereby causing the damages complained of.

The proof shows that the Highway Department upon complaint of Rust reopened a ditch along the paved surface of the highway near his premises and later put in some additional curbing. We may assume, therefore, that some water may have run on to Rust's property from the highway after the street was resurfaced. Proof was offered by both parties as to the cause and extent of the damages to the house. Reports of the United States Weather Bureau for the month of December, 1936, were offered in evidence by the City. These reports showed that there was no precipitation on or about the 15th day of December.

The question as to whether the City "carelessly or negligently diverted or caused to be diverted a great volume of water" against Rust's house on or about the 15th of December, 1936, thereby causing the damages complained of, was one for the jury. We think the evi-

570

dence was sufficient to sustain the verdict. This disposes of the appellant's contentions that the judgment should be reversed because the verdict is not sustained by sufficient evidence; that it is flagrantly against the weight of the evidence; and that a peremptory instruction should have been given in his favor.

Appellant next complains of alleged misconduct on the part of the jury in that its members inspected other property in the vicinity of his home when it visited his premises. Two affidavits were filed in support of this contention. The first of these was given by a girl eleven years of age. This affidavit stated that the jury also examined property adjoining that of Rust. The second affidavit was given by a woman who lived next door to Mr. Rust. This affiant said that, in addition to examining the Rust property, members of the jury inspected cracks in the foundation of her house and walked over and upon her driveway. There were counter affidavits; one of them was given by the deputy sheriff who took the jury to the Rust premises, wherein he stated that no other property was examined or viewed by the jury. Be that as it may, we fail to see how the actions of the jury toward which complaint has been directed could be classed as misconduct. The members of the jury had heard the evidence as to the cause and extent of the damage to Rust's house, and as to the construction of Monmouth Street and the curbing, and they had been taken to the premises in order that they might better understand the whole situation. It was only natural that they would consider the conditions and circumstances surrounding the property toward which the evidence had been directed. We have often pointed out our reluctance to disturb the verdict of a properly instructed jury, and, especially so, when the jury has visited the premises involved in the litigation. Bailey v. Harlan County, 280 Ky. 247, 133 S. W. (2d) 58.

It is our conclusion, therefore, that the judgment should be and it is affirmed.